UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DORIS A. BAKER,

                Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA,

                Defendant.

NO. C07-1664 MJP

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 19.) After reviewing the motion, Plaintiff's response (Dkt. No. 24), Defendant's reply (Dkt. No. 26) and all papers submitted in support thereof, the Court DENIES the motion for the reasons set forth below.

**Background**

Ms. Baker is a former employee of Laboratory Corporation of America ("LabCorp"). At the time of her termination, Ms. Baker was the Director of Information Services and was directly supervised by Robert Albert, Vice President of the Northwest Division. Mr. Albert was responsible for conducting Ms. Baker's annual performance evaluations. On January 16, 2007, Ms. Baker began six weeks of medical leave and returned to her position on February 26, 2007. On March 7, 2007, Mr. Albert conducted Ms. Baker's annual performance review and terminated her employment.

ORDER - 1

Ms. Baker alleges that her termination violated state and federal law. Defendant has moved for summary judgment on all claims. Because Ms. Baker does not contest dismissal of her three state law claims (Resp. at 1), those claims are dismissed and this Court need only address the merits of Plaintiff's claim for violation of the Family and Medical Leave Act ("FMLA").

**Analysis**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Under the FMLA, employees are entitled to twelve weeks unpaid leave per year for serious health conditions. 29 U.S.C. §§ 2601-2654. Violations of the FMLA are categorized into three separate causes of action: (1) interference; (2) retaliation; and (3) discrimination. Bachelder v. American West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001). The Ninth Circuit has indicated that complaints alleging termination of employees because they have taken FMLA leave should be construed as claims of interference. Id. The McDonnell Douglas burden-shifting framework for employment discrimination and retaliation claims is inapplicable to FMLA interference claims. Xin Liu v. Amway Corp., 347 F.3d 1125, 1135 (9th Cir. 2003).

Ms. Baker took six weeks of FMLA-protected leave between January 16, 2007 and February 26, 2007. Her complaint alleges that "Defendant's termination of Plaintiff just nine days after she returned from leave ... constitutes a violation of the FMLA." (Dkt. No. 1 at 3.) Although both parties appear to confuse the appropriate causes of action under the FMLA and attempt to argue theories of retaliation, the Court concludes that the claim is properly one of interference. (See Mtn.

ORDER - 2

at 21-24; Resp. at 16-18.) To prevail on her interference claim, Ms. Baker must demonstrate "by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." Liu, 347 F.3d at 1136. The evidence can be direct or circumstantial. Id.

Defendant argues that there is no causal connection between Ms. Baker's termination and her medical leave because Ms. Baker's termination was necessitated by a history of poor work performance. A defendant who can show that its employee would have been terminated regardless of the decision to take medical leave eliminates the possibility that there exists a causal connection between the leave and the termination. "An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003) (citing Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1262 (10th Cir. 1998)); see also Mathieson v. Yellow Book Sales & Distrib. Co., Inc., Case No. 07-6090-AA, 2008 U.S. Dist. LEXIS 55941 (D. Or. July 21, 2008) (granting summary judgment on FMLA interference claim when the defendants produced undisputed evidence that the plaintiff was fired for violating his employment contract). However, to defeat summary judgment, Ms. Baker need only present evidence creating a triable issue of fact as to whether her leave was a considered factor in the decision to terminate her.

It is unclear from the record when the decision was made to terminate Ms. Baker. Mr. Albert stated in his deposition that he first considered termination sometime in the middle of 2006. (Albert Dep. at 44-45.) Around the same time, he claims to have spoken to Jennifer Walsh, the director of human resources, and Steve Ho, a senior vice president, about Ms. Baker's poor job performance, and they allegedly instructed him "to continue to work with Ms. Baker and, if things didn't improve, to continue to keep them informed." (Albert Dep. at 45.) Ms. Walsh remembers having two or three

ORDER - 3

conversations with Mr. Albert in 2006 about his frustrations with Ms. Baker's work performance and her lack of improvement. (Walsh Dep. at 28-31.)

Ms. Baker alleges that she first informed Mr. Albert of her need for medical leave in October or November 2006. (Baker Decl. ¶ 14; Baker Dep at 130.) On December 28, 2006, Mr. Albert's handwritten notes reflect a discussion with Ms. Baker about the medical leave: "medical leave: possibly January." (Dkt. No. 21 at 27.) On January 3, 2007, Ms. Baker informed Mr. Albert that she would begin her leave on January 16, 2007. (Baker Dep. at 134.)

On January 2, 2007, Mr. Albert sent an email titled "IT Reorganization" to Ms. Walsh and Mr. Ho stating that "changes in departments that are not performing need to be made" and that he intended to "make them quickly." (Dkt. No. 21 at 29.) Mr. Albert describes the following changes in Ms. Baker's department:

> I am going to re-assign some of the functions in IT to Ed Borlas and more or less make [Mr. Borlas] and [Ms. Baker] equal in authority. ... I don't plan on changing [Ms. Baker's] compensation unless you recommend doing so. Because of the importance of this decision, I would like to make it effective ASAP and make a formal announcement [to all employees.]

(Dkt. No. 21 at 29.) The proposed announcement indicates that Ms. Baker would retain responsibility for Computer Operations and Information Services Support Services and would continue to report directly to Mr. Albert. (Id.)

Defendant could contend that this email outlines Mr. Albert's efforts to relieve Ms. Baker of some of her responsibilities as a director, thereby forecasting her imminent termination through a diminished leadership role. However, construing the evidence in the light most favorable to Plaintiff, the email could also be read to reflect Mr. Albert's intention to retain Ms. Baker as a director of IT despite her allegedly poor performance history. Depending on the chosen construction, the email could reveal something about the timing of Mr. Albert's decision to terminate Ms. Baker.

Ms. Baker's annual performance review was conducted in January or February of every year. Because of her medical leave, Ms. Baker's 2007 review was conducted on March 7, 2007, less than

ORDER - 4

two weeks after she returned. In the review, Mr. Albert rated Ms. Baker's job performance as "unacceptable" and terminated her employment. Mr. Albert does not remember exactly when he began preparing Ms. Baker's 2007 review, but he believes it was sometime in December 2006 or January 2007. (Albert Dep. at 49.) Ms. Walsh recalls that Mr. Albert approached her about Ms. Baker's termination only a day or two before it occurred. (Walsh Dep. at 37.)

Mr. Albert must have been aware of Ms. Baker's impending annual performance review when he proposed the reorganization of her department on January 2, 2007. As stated above, that reorganization proposal could be construed as an intention to retain Ms. Baker as a director in IT despite her allegedly poor job performance. If a jury accepts that construction, it might also conclude that Mr. Albert did not make the decision to terminate Ms. Baker until sometime between January 3, 2007 and March 7, 2007, making the termination decision nearly contemporaneous with Ms. Baker's medical leave.

The Ninth Circuit has held that the proximity of leave and termination can "provide[] supporting evidence of a connection between the two events." Liu, 347 F.3d at 1137. Accordingly, the proximity of leave and the decision to terminate an employee can also suggest a likelihood that the leave was a factor in the termination decision. Defendant argues that the temporal proximity of Ms. Baker's leave and termination is coincidental. Ms. Baker postponed her gastric bypass surgery until January 2007 because she was completing a large project in December 2006. Therefore, Ms. Baker's medical leave happened to coincide with her annual review, which was always conducted in January or February. While the timing may be nothing more than coincidence, the Court must view the evidence in the light most favorable to Plaintiff. When combined, the timing of Ms. Baker's leave in relation to her termination and disputed evidence concerning when Mr. Albert made the decision to terminate Ms. Baker present a triable issue sufficient to defeat summary judgment.

Defendant argues that any circumstantial evidence of a causal connection between Ms. Baker's leave and termination is undermined by: (1) evidence that Defendant did not discourage Ms.

Baker from taking medical leave; and (2) documented justification for Ms. Baker's termination in a record of poor job performance. The Court agrees that Ms. Baker has failed to present specific evidence demonstrating that Mr. Albert or any LabCorp employee discouraged her from taking medical leave. Instead, the record shows only that Mr. Albert's primary concern was the functioning of Ms. Baker's department during her absence – justifiable in light of Ms. Baker's role as a director in that department. (See Baker Dep. at 34, 76-77.) Ms. Baker encountered no difficulty in processing her medical leave and no one indicated that taking leave would threaten her job position. (Baker Dep at 35, 76.)

Defendant also points to evidence in the record of Ms. Baker's history of allegedly poor job performance. (See Albert Dep. 18-19, 21, 29, 42, 45-46, 54-55; Dkt. No. 21 at 7, 12, 16; Baker Dep. at 58, 68, 71, 126-29; Walsh Dep. at 18, 27-28, 36.) The Court cannot determine on summary judgment whether this evidence demonstrates that Ms. Baker's termination was justified. Because there exists a triable issue of fact concerning whether Ms. Baker's leave factored into Mr. Albert's decision to terminate her, the evidence that she was not discouraged from taking that leave and any evidence documenting Ms. Baker's past work performance is insufficient for a grant of summary judgment.

**Conclusion**

The Court hereby DENIES Defendant's motion for summary judgment and finds a triable issue of material fact concerning whether Ms. Baker's medical leave was considered as a negative factor in the decision to terminate her.

The clerk is directed to send a copy of this order to all counsel of record.

Date: November 4, 2008

Marsha J. Pechman
U.S. District Judge

ORDER - 6